UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHERRY E. BECKER,

               Plaintiff,

            v.

GENESIS FINANCIAL SERVICES,
MITCHELL N. KAY, and PLAZA
ASSOCIATES,

              Defendants.

NO. CV-06-5037-EFS

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTIONS TO STRIKE AND
GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT**

A hearing was held in the above-captioned matter on November 16, 2007. Plaintiff Sherry Becker appeared *pro se*. Stephen Bernheim appeared on behalf of Defendants Genesis Financial Services ("Genesis"), Mitchell N. Kay ("Kay"), and Plaza Associates ("Plaza"). Before the Court were the following motions: (1) Kay's Motion for Summary Judgment of Dismissal (Ct. Rec. 82), (2) Plaza's Motion for Summary Judgment of Dismissal (Ct. Rec. 86), (3) Plaintiff's Motion for Supplemental Pleadings Rule 15(d) by Special Leave of Court (Ct. Rec. 95), (4) Motion for Summary Judgment of Dismissal by Genesis, Plaza, and Kay on the Issue of the Validity of the Underlying Discover Card Debt (Ct. Rec. 100), (5) Defendants Plaza and Kay's Objections to Evidence and Motion to Strike (Ct. Rec. 113), (6) Genesis's Motion for Summary Judgment of Dismissal

ORDER ~ 1

(Ct. Rec. 115), and (7) Defendants' Motion to Strike Plaintiff's "Affidavit of Facts Remaining Defendants" and Motion to Expedite Hearing (Ct. Rec. 134). After reviewing the submitted materials and relevant authority and hearing oral argument, the Court is fully informed.  This Order serves to supplement and memorialize the Court's rulings that, among other things, retains for trial only the issues of whether Genesis' delayed reporting of the dispute violated 15 U.S.C. § 1692e and, if so, what statutory damages Ms. Becker is to be awarded.

## I.  Motions to Strike

**A.    Defendants Plaza and Kay's Objections to Evidence and Motion to Strike (Ct. Rec. 113)**

Defendants move to strike several lines contained within Plaintiff's responsive documents (Ct. Recs. 91 & 94).  The Court grants and denies in part this motion.  The following material is stricken for the reason noted:

(1)  Plaintiff's Answer to Motion for Summary Judgment (Ct. Rec. 91):

- page 2, line 4 "Discover hired Genesis" (lack of foundation)
- page 2, lines 8-10 (irrelevant)
- page 2, lines 12-12 (hearsay)
- page 6, line 13 (lack of foundation)
- page 7, lines 3-7; page 9, lines 8-15; page 10, lines 4-6 (irrelevant)
- page 9, lines 17-19 (irrelevant)
- page 32 (irrelevant)

ORDER ~ 2

1        •    page 33 ¶¶ 3 & 4 (references settlement)

2     (2)  Plaintiff's Affidavit in Support of Plaintiff's Motion to

3        Oppose Summary Judgment (Ct. Rec. 94):

4        •    page 2, lines 4-25 (hearsay)

5     The following requests to strike are denied because the Court finds

6 the material proffered by *pro se* Ms. Becker relevant and supported by the

7 record:

8     (1)  Plaintiff's Answer to Motion for Summary Judgment (Ct. Rec.

9        91):

10      •    page 3, lines 17-18 and Exhibit 3

11      •    page 4, lines 1-7; page 7, line 1; page 10: lines 10-12

12      •    page 4, lines 15-16

13      •    page 7, lines 24-26; page 81, lines 8-10 and 12-13

14      •    page 9, lines 21 through page 10, line 2

15      •    pages 34-36

16     (2)  Plaintiff's Affidavit in Support of Plaintiff's Motion to

17        Oppose Summary Judgment (Ct. Rec. 94):

18      •    page 3, lines 17-18

19      •    pages 8-11

20 **B.**  **Defendants' Motion to Strike Plaintiff's "Affidavit of Facts**

21     **Remaining Defendants" and Motion to Expedite Hearing (Ct. Rec. 134)**

22     The Court finds Ms. Becker's November 6, 2007, Affidavit (Ct. Rec.

23 133) untimely because it was filed after Defendants filed their replies;

24 accordingly, Defendants' motion to strike is granted.

25 ///

26 ///

ORDER ~ 3

## II.    Factual Background[1]

In 2000, Ms. Becker had two credit cards; a card issued by MBNA and another card issued by Discover.  In July 2000, the balances were as follows:

| MBNA | Discover |
|------|----------|
| $64.04 | $2,488.34 |

(Ct. Rec. 100-2.)  On July 29, 2000, Ms. Becker called Discover to obtain information about interest rates.  That same day, Discover transferred $2,488.34 to Ms. Becker's MBNA account.  It is undisputed that Ms. Becker did not authorize a balance transfer.  In August 2000, Ms. Becker paid $488.34 to Discover and made purchases using her MBNA and Discovery cards.  Ms. Becker's September credit card statements reflected balances of:

| MBNA | Discover |
|------|----------|
| ($2311.72) credit | $4,502.11 |

(Ct. Rec. 100-2).  Ms. Becker called and advised Discover that she had not authorized a balance transfer to her MBNA account.  Discover informed

---

[1]    In ruling on a motion for summary judgment, the Court considered the admissible facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to Ms. Becker, the party opposing the motions. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*).  The following factual recitation was created utilizing this standard.

Ms. Becker it could not cancel the transfer because it already occurred. Ms. Becker stated that she would obtain the money from MBNA. She called MBNA and asked that they send her a check for the amount of the credit on her account, $2,311.27; MBNA did so. (Ct. Rec. 101-2: Dep. Becker at 91-92.)

After receiving the check from MBNA, Ms. Becker wrote a $2,000 check to Discover, kept $311.27, and wrote a $117.07 check to MBNA. Accompanying the $2,000 check on which Ms. Becker wrote "account paid in full" and "RCW 62A 1-207 without recourse," was a letter advising Discover that she believed she was "not liable nor responsible for your agents mishandling your computers [sic] generated entries in regards to an alleged credit balance request." (Ct. Rec. 100-5.) Ms. Becker stated at her deposition:

> I paid the $2,000 that was left on the account before the error happened. I didn't give the money back to pay for the error. I gave the money to the $2,000 that I owed on the account. It's not my fault that Discover got paid back with their own error. But they still got paid. Discover didn't lose anything. I actually – you can't say I gained anything because look where we are right now. And the facts are that I would have continued to make payments to Discover regardless if this error hadn't happened. And I would have paid the $2,000 back out of my own pocket.

(Ct. Rec. 101-2 p. 94.)

Ms. Becker did not pay the remaining balance on the Discover card. Due to no payment, Discover sold the account to a collection agency; there is no evidence in the record as to what entity Discover initially sold the account to.

The account was eventually placed with non-party PRM Financial Services, Inc. (PRM) (Ct. Rec. 94 p. 13) in August 2004. After receiving a dispute from Ms. Becker, PRM sent the account back to its placement

1  partner Messerli & Kramer in March 2005.  (Ct. Rec. 106 p. 54.)  The

2  identification of the entity with whom Messleri and Kramer placed the

3  account is unknown.

4      However, Genesis purchased the debt on April 28, 2005, from River

5  City Financial LLC.  (Ct. Recs. 84 & 88 ¶ 4; Ct. Rec. 100-5.)  Ms. Becker

6  contends this is a lie; her research discovered that the only company

7  licensed to do business in Minnesota during this time as River City

8  Financial LLC was an insurance company, not a collection agency. (Ct.

9  Rec. 94 at 8-11.)

10     David Robinson, Vice President of Operations at Genesis, declared,

11 "Genesis relied upon account information it received from River City

12 Financial showing that Becker owed $3,029 on her Discover Card."  (Ct.

13 Rec. 117 ¶ 6.)  Mr. Robinson also states that Genesis reported the debt

14 in the amount of $3,029 to TransUnion, Equifax, and Experian in July

15 2005. (Ct. Rec. 117 ¶ 9.)   An Experian credit report from July 19, 2006,

16 lists Genesis as making an inquiry in July 2005; however, an Experian

17 credit report dated July 7, 2007, lists Plaza Associates as the entity

18 making an inquiry on July 14, 2005. (Ct. Rec. 123 pp. 7 & 10.)

19     In May 2005, Genesis referred the account to Plaza, a collection

20 agency.  (Ct. Rec. 87 ¶ 4; Ct. Rec. 117 ¶ 7.)  Paul Brennan, the

21 president of Plaza, stated, "[w]hen Genesis forwarded the account to

22 Plaza for collection, no one at Plaza had any knowledge of any dispute

23 between Plaintiff and Discover.  The information provided to Plaza

24 indicated that the creditor was Genesis Financial Solutions." *Id.* ¶ 7.

25     On May 13, 2005, Plaza sent Ms. Becker a demand letter for

26 $3,029.40. (Ct. Rec. 87 Ex. 1.) This letter contained a debt validation

notice requiring a response within thirty days and listed the "creditor" as "Genesis Financial Solutions Assignee of Discover Card." (Ct. Rec. 87 Ex. 1.)  The letter contained an address in the top left hand corner that differed from the address listed in the center of the page to which payments were to be addressed.  *Id.*  Ms. Becker did not respond to this demand letter.  (Ct. Rec. 87: Brennan Decl. ¶ 7.)

Plaza sent a second demand letter on June 27, 2005.  (Ct. Rec. 87 Ex. 2.)  This letter again contained two addresses, but now stated that Ms. Becker she could write to Plaza at the payment address if she had questions regarding the debt.  *Id.*  Ms. Becker did not respond to this letter either.  (Ct. Rec. 87: Brennan Decl. ¶ 7.)

Not receiving a response from Ms. Becker, Plaza forwarded the account to its attorneys, Kay, for further collection handling.  *Id.* ¶ 8 & Ct. Rec. 83 ¶ 4.  When Kay received the account from Plaza, Kay was not aware that Ms. Becker disputed the debt.  (Ct. Rec. 83: Siegel Aff. ¶ 7.)

On August 8, 2005, Kay sent Ms. Becker a demand letter on "Law Offices of Mitchel N. Kay, P.C." letterhead for $3,029.40 containing a debt validation notice and also the following advisement, "[p]lease be advised that your account as referenced above, is being handled by this office." (Ct. Rec. 83 Ex. 1; Ct. Rec. 87 Ex. 3.)  The letter indicated the creditor was "Genesis Financial Solutions Assignee of Discover Card." *Id.*  The address in the upper left hand corner of the document differed from the address in the center of that page to which all payments were to be addressed.  The letter also contained the disclaimer, "This communication is from a debt collector and is an attempt to collect a debt.  Any information obtained will be used for that purpose.  At this

1  point in time, no attorney with this firm has personally reviewed the

2  particular circumstances of your account." *Id.*

3      Ms. Becker responded to this demand letter from Kay on August 16,

4  2004, by sending (1) a letter, (2) a copy of Kay's letter on which she

5  wrote "an accord & satisfaction is done and over for 6 yrs now" and

6  "Bogus fraud" (Ct. Rec. 83 Ex. 1), (3) a copy of the September 2000

7  $2,000 check to Discover that stated "account paid in full," and (4) a

8  copy of her September 2000 Discover statement showing the balance

9  transfer and a new balance of $4,502.11. Ms. Becker addressed her letter

10 to Discover and Genesis/Kay, however, the address for Genesis/Kay was

11 actually Plaza's P.O. address. The letter stated:

12         I have put up now with 6 years of bogus harassment from 5
           different collection agencies for a [sic] error and fraud on
13         Discovers part. Your/Discovery's [sic] refusal to correct such
           fraud has caused the entire matter to go on for 6 years. I
14         have sent certified correspondence at each attempt. There has
           <u>never been</u> a valid response by Discover to acknowledge any of
15         this. Discover just continues to try to continue the fraud and
           sells a bogus account that does not legally exist.
16
   (Ct. Rec. 83-3 Ex. 2.)
17
       Upon receipt of this letter from Plaza, Kay stopped collection
18
   efforts (Ct. Rec. 83: Siegel Decl. ¶ 7) and sent a letter to Ms. Becker
19
   on August 24, 2007, on "Law Offices of Mitchell N. Kay, P.C." letterhead,
20
   stating:
21
           In response to your recent communication, please be advised
22         that we have noted your dispute regarding this matter in our
           records. Accordingly, we are closing our file and will return
23         this account to the creditor, referenced above [Genesis
           Financial Solutions Assignee of Discover Card]. Any questions
24         regarding your credit report should be addressed to the
           creditor, referenced above, as we do not report to the credit
25         bureaus in any form or fashion.

26 (Ct. Rec. 83-4 Ex. 3.)

   ORDER ~ 8

Discover responded to Ms. Becker's letter on September 14, 2005; Discover sent a copy of this letter to Genesis who forwarded it to Kay. (Ct. Rec. 83 ¶ 8 & Ex. 4.)  Discover's letter stated:

> Due to your recent letter, I revisited your concerns. . . [W]hen you called our Customer Service and Banking Department on August 27, 2000, you informed us that you did not authorize the balance transfer.  You were advised that we were not able to stop the balance transfer once it has been processed.  You stated that the balance transfers were applied to your MBNA account as a credit and you would be contacting MBNA to request a check.  Once the check was received from MBNA, you advised us that you would send the funds to Discover Financial Services LLC.  When we contacted MBNA, they confirmed that a credit balance refund check was sent to you on August 27, 2000 for $2,311.27; however, we do not have a record of receiving a payment in that amount.  In light of all the information presented to me, our position has not changed.

(Ct. Rec. 83 Ex. 4.)  Discover also enclosed a copy of Discover's October 12, 2004, letter to Ms. Becker.  *Id.*

On September 29, 2005, Kay forwarded Discover's written explanation to Ms. Becker and stated:  "Our client [Discover] has advised us the claim of dispute for the above referenced account is not valid and the balance is due and owing.  See the enclosed letter dated 9/14/05. Disregard our letter to you dated 08/24/05.  We are still handling this matter."  (Ct. Rec. 83 Ex. 5.)  Kay resumed collection efforts and issued another debt collection letter on October 31, 2005.  (Ct. Rec. 83: Seigel Decl. ¶9 & Ex. 6.)  This collection letter included two addresses: one in the top left corner and a different address in the center of the document to which payments were to be sent.

Ms. Becker looked into purchasing a vehicle at the Tri-City Toyota dealership in January 2006.  (Ct. Rec. 101: Becker Dep. at 35.)  After being denied credit, she learned that this debt was on her credit report. *Id.*  At her deposition, Ms. Becker testified that, even if she had been

ORDER ~ 9

approved, she would not have purchased the vehicle as she disliked the salesperson. *Id.* Genesis reported that the debt was disputed to Equifax on February 6, 2006, and to TransUnion and Experian on February 7, 2006. (Ct. Rec. 117 ¶ 12.)

Genesis continued taking steps to collect the debt; on April 13, 2006, Northland Group Inc. sent a letter to Ms. Becker stating, "Our client, Genesis Financial Solutions, will allow you to settle your account . . . ." (Ct. Rec. 121 p. 10.)  Ms. Becker has not made payment.

**III. Defendants' Motions for Summary Judgments for Dismissal**

**A.    Summary Judgment Standard**

Summary judgment is appropriate where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The party seeking summary judgment must demonstrate there is an absence of disputed issues of material fact to be entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  In other words, the moving party has the burden of showing no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Lynn v. Sheet Metal Worker's Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982)).  The court is to view the facts and draw inferences in the manner most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999).

A burden is also on the party opposing summary judgment to provide sufficient evidence supporting his claims to establish a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213. "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252).

**B.    Counts 1-4**

Ms. Becker is not pursuing Counts 1-4 against the above-captioned Defendants. Therefore, the Court dismisses Count 1 (15 U.S.C. § 1693f(a)), Count 2 (15 U.S.C. § 1693f(f)), Count 3 (15 U.S.C. § 1666(3)), and Count 4 (15 U.S.C. § 1666a)).

**C.    Count 5:  15 U.S.C. § 1692e**

Plaintiff claims Defendants violated the Fair Debt Collections Practices Act (FDCPA) by using a false, deceptive, or misleading representation in the collection of a debt. Plaintiff's primary argument is that Defendants violated § 1692e by misrepresenting that a "debt" was owed; Plaintiff contends she did not owe Discover any money.

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors . . . ." 15 U.S.C. § 1692. A "debt collector" includes "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Among other things, the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of

any debt." *Id.* § 1692e.   Subsection (e) of the Act contains a non-exhaustive list of prohibited activities which constitute false, misleading or deceptive practices:

> (2)  The false representation of--(A) the character, amount, or legal status of any debt;
> (6)   The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to--(B) become subject to any practice prohibited by this subchapter.
> (8)  Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
> (10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
> (12)   The false representation or implication that accounts have been turned over to innocent purchasers for value.
> (14)   The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

"False may be defined as 'intentionally untrue . . . adjusted or made so as to deceive . . . intended or tending to mislead.'   Something is deceptive if it intends or has the power to 'give a false impression.' And, something is misleading if it 'lead[s] in a wrong direction or into a mistaken action or belief often by deliberate deceit. . . .'" *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1175 n.10 (9th Cir. 2006) (quoting *Webster's Ninth New Collegiate Dictionary* (1987)).

The standard used for determining whether a collection letter or conduct violates § 1692e is an objective standard based on the "least sophisticated consumer." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982).   Collection letters violate § 1692e if:

> the notices contain language that "overshadows" or "contradicts" other language that informs consumers of their rights.   In addition courts have found collection notices misleading where they employ formats or typefaces which tend to obscure important information that appears in the notice.

ORDER ~ 12

> Finally, courts have held that collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.

*Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) (citations omitted). The concept of reasonableness is still preserved; "even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* at 1319. This standard both "(1) ensures the protection of all consumers, even the naive and trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320.

### 1.  Plaza

The Court grants Plaza's Motion for Summary Judgment, finding Ms. Becker failed to present sufficient evidence to create a genuine issue of material fact as to whether Plaza engaged in false, deceptive, or misleading representations. Starting with § 1692e(14), Plaza clearly set forth on the debt collection notices that it was collecting the Discover debt in its own name on behalf of the Genesis creditor; therefore, there is no violation of § 1692e(14). Plaza did not represent or imply that the account had been turned over to an innocent purchaser for value (Ct. Rec. 87: Brennan Decl. ¶ 9); there is no violation of § 1692e(12). In addition, Plaza did not represent or imply that a sale, referral, or other transfer of any interest in the debt would occur (Ct. Rec. 87: Brennan Decl. ¶ 9); there is no violation of § 1692e(6).

As to § 1692e(10), Ms. Becker contends Plaza's notices were deceptive as they contained two different addresses, one in the upper

ORDER ~ 13

left hand corner and the other in the center of the document to which payments were to be sent. Two separate addresses on a single letter could confuse the least sophisticated consumer. Ms. Becker however did not contact Plaza (Ct. Rec. 9: Second. Amd. Compl. p. 6 ¶ 6); and she fails to refute Plaza's statement that both addresses accepted debt disputes. Accordingly, listing the two addresses is not misleading or deceptive; there is insufficient to create a genuine issue of material fact as to whether Plaza violated § 1692e(10).

The Court also finds, even if Plaza made a credit inquiry in July 2005 as indicated in the Experian credit report, this was not a violation of § 1692e(8). Plaza was not communicating any debt information to Experian, but simply making an inquiry. 15 U.S.C. § 1681(a)(3)(A).

Ms. Becker's primary argument is that Plaza, and also Kay, were required to investigate whether the debt was valid prior to sending the debt collection notices. A district court in *Bleich v. Revenue Maximization*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002), ruled, "where a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, standing alone, cannot form the basis for a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt." 233 F. Supp. 2d at 501; *see also Wyler v. Computer Crit, Inc.*, 2006 WL 2299413 (E.D.N.Y. 2006) (citing *Bleich*). The Court agrees with the district court's analysis in *Bleich* and finds Plaza, and Kay, appropriately relied upon Genesis' representation that the debt was valid. Plaza's collection notices contained the required debt validation notice[2] and Plaza was not

---

[2] The 15 U.S.C. § 1692g(a) notice must be sent by the debt

aware of any dispute by Ms. Becker; therefore, Plaza did not need to investigate the debt's validity before sending collection notices to Ms. Becker. *See Lindbergh v. Transworld*, 846 F. Supp. 175, 178-79 (D.Conn. 1994) (citing *Hubbard v. National Bond & Collection Assocs.*, 126 B.R. 422 (D. Del. 1991), *aff'd without opinion*, 947 F.2d 935 (3d Cir. 1991)). Plaza appropriately relied upon information supplied by Discover and Genesis that the debt was valid (Ct. Rec. 87: Fuller Aff. ¶ 7).

As to whether Plaza had actual knowledge that MS. Becker disputed the debt, there is nothing in the record that it did. The Court finds Ms. Becker failed to present sufficient evidence to establish a genuine issue of material fact as to whether Plaza violated § 1692e(2) (false representation of legal status of debt) or § 1692e(8) (failure to communicate that debt is disputed).[3]

In summary, the Court grants Plaza's motion for summary judgment.

### 2.   Kay

The Court finds Ms. Becker failed to present sufficient evidence in connection with any claims under § 1692e(6)[4], § 1692e(8)[5], § 1692e(12)[6],

---

collector. *Mahon v. Credit Bureau*, 171 F.3d 1197 (9th Cir. 1999)

[3]While Ms. Becker complains about Discover's conduct in "passing off" this disputed debt to successive collectors, Discover settled with Ms. Becker and Congress has not acted to close this "loophole" in the FDCPA. See *Jang v. A.M. Miller*, 122 F.3d 480, 484 (7th Cir. 1997).

[4] Ms. Becker did not refute Kay's statement that it "has no record at all indicating that Kay ever made any false representation or implication that a sale, referral, or other transfer of any interest in

ORDER ~ 15

or § 1692e(14)[7]. In addition, for the reasons given below, the Court concludes Ms. Becker submitted insufficient evidence to establish a genuine issue of material fact as to whether Kay used "any false, deceptive, or misleading representation or means in connection with the collection" of Ms. Becker's debt when it continued to pursue collection of the debt after receiving notice of the dispute.  15 U.S.C. § 1692e.

After Plaza forwarded Ms. Becker's account to Kay for collection, Kay sent its first collection letter on August 8, 2005.  The letter itself was not false, misleading, or deceptive because Kay did not have information as to a dispute and the letter contained the required debt validation notice.  The least sophisticated consumer would understand that the account had been forwarded to a different collection company, especially since Plaza stopped sending letters and Kay's letter stated,

---

this debt would cause Becker to lose any claim or defense to payment of the debt . . . ." (Ct. Rec. 83: Siegel Decl. ¶ 9.)

[5]  Ms. Becker failed to rebut Kay's statement that it did not report the debt to a credit bureau.  (Ct. Rec. 83: Siegel Aff. ¶ 11.)

[6]  There is no evidence to challenge Kay's position that it did not represent that Ms. Becker's debt had been sold to innocent purchasers for value. (Ct. Rec. 83: Siegel Decl. ¶ 9.)

[7]  Mr. Siegel stated, "Kay only attempted to collect in this case under its true name . . . ." *Id.* ¶ 9.  Ms. Becker did not present any evidence to show that Kay was collecting the debt under another name and the documents speak for themselves.

ORDER ~ 16

"Please be advised that your account, as referenced above, is being handled by this office." (Ct. Rec. 83 Ex. 1.)

Upon receiving Ms. Becker's dispute in August 2004, Kay appropriately notified her it was ceasing collection activities. 15 U.S.C. § 1692g(b); *see Jang*, 122 F.3d at 483; *Zamos v. Asset Acceptance*, 423 F. Supp. 2d 777, 787 (N.D. Ohio 2006) (quoting *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031-32 (6th Cir. 1992)). Ms. Becker submits it was misleading and deceptive for Kay to then later resume its collection activities. Kay's letter on September 29, 2005, however advised Ms. Becker why Kay was resuming its collection and told her to disregard the August 24, 2005, letter stating it was ceasing collection activities. (Ct. Rec. 83 Ex. 4 & 5.) The Court finds this letter was clear and the least sophisticated consumer would understand that Kay was renewing its collection activity.

It was also appropriate for Kay to insert a disclaimer advising that no attorney had reviewed Ms. Becker's file. In fact, it would have been misleading for Kay not to do so as an attorney had not reviewed Ms. Becker's file. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 & 65 (2d Cir. 2005). Ms. Becker relies upon *Boyd v. Wixler*, 275 F.3d 642 (7th Cir. 2001), for the proposition that a lawyer at Kay was required to review her account. However, *Boyd* did not hold that an attorney must review a collection letter; rather it requires collection letters on legal letterhead to identify if the letters were not reviewed by an attorney so as not to be misleading. Kay complied with this legal requirement.

To support Kay's position that it did not violate § 1692e(2), Mr. Siegel declared,

> Kay reviewed the letter from Discover and concluded, based on the information provided by Ms. Becker and by Discover, that Becker was still responsible for the debt.  In our procedure employed when we review notices of dispute from debtors, we review all relevant correspondence before resuming collection. In this case it appeared from all evidence given to Kay that Becker had transferred funds from one account balance to the other.  Based on the information available to us, and in reliance on the material supplied by Discover, we concluded that she had received the benefit of the transaction and that she was responsible to repay the balance transfer amount.  Kay did not intend to violate the law in any way: Kay only compared the notices from the debtor and from the original creditor and concluded that Discover's claim had merit.

(Ct. Rec. 83 ¶ 10.)

Upon obtaining notice of the dispute, the debt collector must verify the debt with the creditor and then report its conclusion in writing to the consumer.  The debt collector's determination that the debt is valid must be reasonable, but in reaching its conclusion it need not engage in its own independent investigation of the correctness of the documentation provided by the creditor. *Clark v. Capital Credit & Collection Services*, 460 F.3d 1162, 1174 (9th Cir. 2006).  In *Clark*, the debt collector obtained an itemized statement of the debtor's account from the creditor; the Ninth Circuit found it was reasonable for the debt collector to base is validity conclusion on this itemized statement showing the debt.  *Id.* In *Chaudhry v. Gallerizzo*, the debt collector received a copy of the creditor's computerized summary of the debtor's loan transactions, including a running account of the debt amount, a description of every transaction, and the date the transactions occurred. 174 F.3d 394, 406 (4th Cir. 1999).

ORDER ~ 18

Kay relied on the following items to assess Ms. Becker's debt validity: (1) Discover's September 14, 2005, letter; (2) Discover's October 12, 2004, letter; and (3) Ms. Becker's August 16, 2004, letter, which contained the September 2000 Discover statement, which showed the balance transfer.  The Court finds Kay had sufficient information to determine the debt was valid - in particular, the September 2000 Discover statement.  Kay did not need to investigate whether the transfer was properly made; rather, Kay needed to see documentation supporting Discover's assertion that a balance transfer occurred.  The September 2000 Discover statement supported Discover's position.

Therefore, the Court finds Ms. Becker failed to present sufficient evidence to establish a genuine issue of material fact as to whether Kay engaged in false, misleading, or deceptive conduct under § 1692e. Accordingly, the Court grants Kay's motion to dismiss the § 1692e cause of action - Count 5.

**3.    Genesis**

Genesis seeks summary judgment in its favor because there is no evidence that it violated any statutory duty, *except*[8] that it delayed

---

[8]  Genesis admits it reported a $3,029 Discover debt to the credit reporting agencies in July 2005.  Genesis was aware that Ms. Becker disputed this amount in August 2005.  However, Genesis did not share this information with the credit reporting agencies until February 6 (Equifax) and 7 (TransUnion and Experian), 2006.  Genesis does not dispute for purposes of this motion that this delay violated § 1692e(8) ("failure to communicate that a disputed debt is disputed").

ORDER ~ 19

reporting the dispute to the credit reporting agencies - there is no evidence, however, Ms. Becker suffered any damage as a result of this delayed reporting.

Genesis did not send collection notices; it referred the claim to Plaza. Ms. Becker maintains Genesis knew or should have known that the debt was disputed. She contends Genesis is lying that it obtained her account from River City Financial. However, she does not present any evidence to rebut Genesis' affidavit from Vernon Fuller that the documentation Genesis received at the time it obtained Plaintiff's Discover card account for collection reflected an owed debt and did not list that it was disputed. (Ct. Rec. 130.) Ms. Becker's unsupported allegations are insufficient to survive summary judgment.

Genesis asks the Court to rule that Ms. Becker failed to present evidence of actual damages as a result of Genesis' delayed reporting. Section 1692k(a) of Title 15 states:

> . . . any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of–
>     (1)    any actual damage sustained by such person as a result of such failure;
>     (2)    (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; . . . .

The Court finds Ms. Becker failed to provide any evidence of actual damages as a result of Genesis' delay. Ms. Becker learned of the reporting in January 2006 when she was looking into buying a car and was denied credit at the Tri-City Toyota dealership. (Ct. Rec. 101: Becker Dep. at 35-38.) However, she stated at her deposition that she was not planning on buying the car because she disliked the salesperson. She does claim she suffered mental distress and loss of sleep over the past

ORDER ~ 20

seven years due to Discover's conduct and the resulting collection process; however, she did not testify that this mental distress was caused in whole or in part by Genesis' delayed reporting.  Without more, the Court finds Ms. Becker failed to present sufficient evidence to prove actual damages as a result of the delayed reporting.  Ms. Becker is still entitled to seek the $1,000 statutory damages.  The Court grants Genesis' motion, dismissing the actual damages claim and all § 1692e claims, except the delayed reporting claim.

**D.    Count 6:  15 U.S.C. § 1692j**

The Court finds Ms. Becker presented insufficient evidence to establish a genuine issue of material fact as to whether Kay, Genesis, or Plaza violated 15 U.S.C. § 1692j(a) or (b); therefore, the Court grants summary judgment in Defendants' favor on Count 6.    Section 1692j provides:

> (a)  It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, *when in fact such person is not so participating.*
> (b)  Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter.

(emphasis added).  Plaza was initially retained by Genesis to do the collecting. (Ct. Rec. 97: Brennan Aff. ¶¶ 4 & 7.)  Then Kay was retained to collect the debt (Ct. Rec. 83: Siegel Aff. ¶¶ 4 & 7.)  Therefore, § 1692j does not apply to Plaza and Kay because they were participating in the debt collection.  This section could apply to Genesis because there is no evidence Genesis participated in the debt collection; however,

ORDER ~ 21

there is no evidence that Genesis designed, compiled or furnished any form that would subject it to liability under § 1692j(a).

**E.    Count 7:  15 U.S.C. § 1681s-2**

The Court also grants summary judgment in each Defendants' favor as to Count 7: 15 U.S.C. § 1681s-2.    Section 1681s-2 imposes two responsibilities on furnishers of information to consumer reporting agencies, i.e. a "data furnisher."    The first duty a data furnisher has is to provide accurate information.    *Id.* § 1681s-2(a).    This duty is "enforced exclusively . . . by the Federal agencies and officials and the State officials identified in that section," 15 U.S.C. § 1681s-2(d); therefore, Ms. Becker cannot bring an action under § 1681s-2(a).

Second, § 1681s-2(b) requires data furnishers to investigate and/or correct inaccurate information.    A private litigant can bring a lawsuit to enforce § 1691s-2(b), but only *after* reporting the dispute to a consumer reporting agency, who in turn reports it to the data furnisher. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002); *Young v. Equifax*, 294 F.3d 631, 640 (5th Cir. 2002); *Peasley v. Verizon Wireless (VAW) LLC*, 364 F. Supp. 2d 1198, 1200 (S.D. Cal. 2005); *Zamos v. Asset Acceptance*, 423 F. Supp. 2d 777, 787 (N.D. Ohio 2006).    Ms. Becker failed to present evidence that she gave notice of the inaccurate information to a consumer reporting agency. Therefore, even if Defendants were data furnishers in this instance, Ms. Becker cannot maintain an action under §1681s-2(b).    Summary judgment is granted in Defendants' favor as to Count 7.

ORDER ~ 22

**F.    Summary**

The Court grants Defendants' motions.  Counts 1-4, 6, and 7 are dismissed against all Defendants.  Count 5 is dismissed against Kay and Plaza; however, Count 5 continues as to whether Genesis violated 15 U.S.C. § 1692e by failing to report the debt as disputed prior to February 2006.  If Ms. Becker is successful on Count 5 against Genesis, she is limited to seeking statutory damages, not actual damages.

**IV.  Motion for Summary Judgment of Dismissal by Genesis, Plaza, and Kay on the Issue of the Validity of the Underlying Discover Card Debt (Ct. Rec. 100)**

Genesis, Plaza, and Kay seek a court ruling that Defendants did not misrepresent the "character, amount, or legal status" of a debt in question as defined under 15 U.S.C. § 1692e(2)(A). They ask the Court to find that Ms. Becker owed a "debt."  Ms. Becker relies upon 15 U.S.C. §§ 1693(g)(3) and 1666(e) to argue that she did not incur any liability as a result of Discover's unauthorized balance transfer; further, she argues, even if a debt was owed, an accord and satisfaction was reached.

The Court finds § 1666(e), which specifies that a creditor forfeits any right to collect a debt if the creditor fails to comply with the requirements of § 1666, inapplicable.  Plaintiff argued § 1666(d) was violated; § 1666(d), however, provides:

> With respect to any sales transaction where a credit card has been used to obtain credit, *where the seller is a person other than the card issuer*, and where the seller accepts or allows a return of the goods or forgiveness of a debit for services which were the subject of such sale, the seller shall promptly transmit to the credit card issuer, a credit statement with respect thereto and the credit card issuer shall credit the account of the obligor for the amount of the transaction.

ORDER ~ 23

(Emphasis added).   Discover was both the credit card issuer and the entity which initiated the transaction - "the seller."   Accordingly, § 1666(e) is inapplicable.   Therefore, Defendants did not forfeit any rights to collect.

The next section Ms. Becker relies upon, 15 U.S.C. § 1693g(e), provides: "Except as provided in this section, a consumer incurs no liability from an unauthorized electronic fund transfer." (Emphasis added.)   Ms. Becker maintains that Discover engaged in an unauthorized electronic fund transfer.   Even assuming that Ms. Becker did not give permission to Discover to transfer funds to her MBNA account, the evidence before the Court does not support a finding that an "unauthorized electronic fund transfer" as defined by the FDCPA occurred. Section 1693a(11) defines "unauthorized electronic fund transfer" as

> an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer *and* from which the *consumer receives no benefit*, but the term does not include any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution.

(Emphasis added.)   Here, Ms. Becker received a $2,488.34 credit to her MBNA account.   Accordingly, she received a "benefit" from the transaction.   Ms. Becker did not have to pay any balance transfer fees or interest associated with the balance transfer.   Therefore, the transfer was not "unauthorized" as the term is used in the FDCPA and Ms. Becker is obligated to pay for it.

ORDER ~ 24

Ms. Becker relies on 12 C.F.R. Pt 205, Supp. I (Official Staff Interpretations), which states in pertinent part:

2(m) Unauthorized Electronic Fund Transfer
1.   Transfer by institution's employee.   A consumer has no liability for erroneous or fraudulent transfers initiated by an employee of a financial institution.

This section is entitled, "Unauthorized Electronic Fund Transfer." Accordingly, the Court finds this regulation inapplicable because Ms. Becker received a benefit from the transfer.

Ms. Becker maintains the debt was resolved by accord and satisfaction when Discover accepted her check for $2,000 containing a notation "account paid in full." Generally, when a creditor accepts a debtor check that informs the creditor the debtor intends the check to be considered full payment, the creditor agrees to the settlement and cannot seek additional compensation. This rule does not apply when the debt or amount is liquidated - is certain and due - unless there is new consideration. *Keith Adams & Assocs., Inc v. Edwards*, 3 Wash. App. 623, 628 (1970), disapproved of on other grounds, *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wash. 2d 885 (Wash. 2001); *see also Tonseth v. Serwold*, 22 Wash. 2d 629 (1945). The $2,488.34 was certain and due as reflected in Discover's billing statement. By cashing Ms. Becker's $2,000 check, Discover did not agree to a settlement and forego the collection of the remaining owed monies.

**V.  Plaintiff's Motion for Supplemental Pleadings (Ct. Rec. 95)**

Ms. Becker seeks leave to update the Complaint to recognize that Discover is dismissed due to a settlement and that the remaining claims are based on violations of the FDCPA, specifically § 1692e. Amendment is unnecessary as the Court's rulings on the motions narrow the issues and

the Court previously amended the caption to reflect Discover's dismissal. (Ct. Rec. 127.)    Accordingly, the Court denies Plaintiff's Motion for Supplemental Pleading.

## VI.  Conclusion

For the reasons given above, **IT IS HEREBY ORDERED:**

1.    Mitchell N. Kay's Motion for Summary Judgment of Dismissal **(Ct. Rec. 82)** is **GRANTED.**

2.    Defendant Plaza Associates' Motion for Summary Judgment of Dismissal **(Ct. Rec. 86)** is **GRANTED.**

3.    Plaintiff's Motion for Supplemental Pleadings Rule 15(d) by Special Leave of Court **(Ct. Rec. 95)** is **DENIED.**

4.    Motion for Summary Judgment of Dismissal by Genesis, Plaza, and Kay on the Issue of the Validity of the Underlying Discover Card Debt **(Ct. Rec. 100)** is **GRANTED.**

5.    Defendants Plaza and Kay's Objections to Evidence and Motion to Strike **(Ct. Rec. 113)** is **GRANTED IN PART and DENIED IN PART.**

6.    Genesis Financial's Motion for Summary Judgment of Dismissal **(Ct. Rec. 115)** is **GRANTED.**

7.    Defendants' Motion to Strike Plaintiff's "Affidavit of Facts Remaining Defendants" and Motion to Expedite Hearing **(Ct. Rec. 134)** is **GRANTED.**

8.    The remaining issues for trial are whether Genesis violated 15 U.S.C. § 1692e by waiting until February 2006 to report to the credit reporting agencies that Ms. Becker disputed the debt and, if so, what statutory damages are to be awarded to Ms. Becker.

///

1    **IT IS SO ORDERED:**  The District Court Executive is directed to enter

2    this Order and provide a copy to Plaintiff and counsel.

3    **DATED** this ___21st___ day of November 2007.

4

5                        s/ Edward F. Shea
                         EDWARD F. SHEA
6                 United States District Judge

7
Q:\Civil\2006\5037.fall.07.msjs.frm
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 27